UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODRICK MURDOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 04 C 8020 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| ILLINOIS DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Rodrick Murdock ("Murdock"), who is African-American, sued his former employer, the Illinois Department of Transportation ("IDOT"), alleging that IDOT discriminated against him based on his race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2006). IDOT has moved for summary judgment.

Murdock fails to respond directly to most of IDOT's arguments, relying instead on conclusory allegations. Nevertheless, the court has done its best to analyze plaintiff's claims, as it has a duty to ensure that the moving party is indeed entitled to summary judgment. For the reasons explained below, IDOT's motion for summary judgment is granted.

**I. BACKGROUND**

From December 3, 2001, through March 8, 2002, Murdock was employed by IDOT as a temporary seasonal Highway Maintainer, or a "snowbird." Although snowbirds assist full-time Highway Maintainers with their duties, they are hired by IDOT

1

as temporary employees, whose primary duty is to assist in snow and ice removal during the winter months. Murdock expected his position to last until March or April of 2002.

Murdock was assigned to the Stevenson Yard. Giovanni Fulgenzi ("Fulgenzi") was the personnel services manager for District One, which encompassed the Stevenson Yard. Fulgenzi was responsible for overseeing the daily operations of the Human Resources office, which included, among other things, payroll, workers' compensation, and the disciplining of employees.

On March 6, 2002, Murdock was assigned to a crew with Gregg Leschman ("Leschman"), Robert Kohn ("Kohn"), and another snowbird named Bob Marek ("Marek"). Both Leschman and Kohn were full-time Highway Maintainers. Nicholas Janeteas Jr. ("Janeteas") was the Acting Lead Worker for the crew, which was assigned to perform pothole patching that day.

The operation involved an asphalt truck pulling a "hot-box" containing heated asphalt. Leschman was driving the asphalt truck and Murdock was in the passenger seat. Janeteas was standing behind the truck on the driver's side to direct the patching operation and the asphalt truck. Kohn was also standing behind the truck on the passenger side. At some point, Janeteas tried to motion to Leschman to move the truck forward because it was blocking the entrance ramp to the highway and causing a traffic jam. However, Leschman did not see Janeateas. After observing Janeteas motion several times for the asphalt truck to move, Kohn ran up to the passenger side door and banged on it to get the attention of its occupants. Leschman finally looked over at Kohn and moved the truck forward.

After the truck had moved, Murdock made a comment to Kohn regarding his banging on the door. Though the exact words used by Murdock are in dispute,[1] all accounts involve mention of a .357, which is a type of gun. Kohn asked Murdock if he was joking and Murdock responded, "You owe me an apology. You banged on my door." Kohn Dep. 17.

Kohn believed that Murdock was trying to provoke a fight and felt threatened by Murdock's comment. He reported the comment to Janeteas, who told Kohn to stay in the lead truck to avoid any further problems with Murdock. Janeteas then reported to Control that a crew member had been threatened.

Later that day, Ken Chlebicki ("K.C."), who was Janeteas' supervisor, asked Kohn if he felt threatened. Kohn responded that he did. K.C. then asked Leschman and Kohn to write statements regarding what had occurred between Murdock and Kohn. Neither Leschman nor Kohn were told what to write in their statements. Leschman reported that Murdock had said, "If this happened and I had a .357 it would be different." Def.'s Ex. E. Kohn reported that Murdock had said, "If you do things like that people might pull a .357 magnum on you." Def.'s Ex. F.

On or about March 7, 2002, Fulgenzi was notified by K.C. about Murdock's alleged threat. He received Leschman and Kohn's written statements and, after reviewing them, believed that Murdock had, in fact, threatened Kohn.

IDOT has a "Zero Tolerance Policy" concerning violence in the workplace, which provides in relevant part:

> The use of violence or the threat of the use of violence by Department employees to subordinates, co-workers, superiors or others will not be

---

[1] Murdock's version is that he asked Kohn, "How would you like it if someone scared you with something that sounded like a .357." Pl.'s Opp. 1-2.

>tolerated. No employee may physically use or threaten to use any object to harm another individual. All employees have the responsibility to promptly and completely report any actions of violence or the threat of violence, to the appropriate management personnel.

Def.'s Ex. D. Based on the written statements that both mentioned a gun and Kohn's indication that he felt threatened by Murdock, Fulgenzi determined that Murdock had violated the Zero Tolerance Policy. The next day, Fulgenzi confirmed that Murdock's termination would be consistent with discipline issued by IDOT in similar cases with Mike Accentura, who is one of IDOT's Labor Relations employees.

On March 8, 2002, Fulgenzi sent Murdock a letter notifying him that he would be terminated effective that day for conduct unbecoming a state employee. He did not make any comments regarding Murdock's race or color at the time; indeed, at the time Fulgenzi made the decision to terminate Murdock, he was not aware of Murdock's race or color. Neither Kohn nor Janeteas had any input on the decision to terminate Murdock.

Murdock filed a complaint on December 10, 2004, alleging that he was discriminated against based on his color. Specifically, Murdock alleged that he was terminated for an offense he did not commit and that he was not allowed to explain his side of the story. Murdock further alleged that other employees who committed similar offenses were allowed to keep their jobs. He also alleged that he was discriminated against by not being allowed to work with certain people as a "duo," by not being allowed to ride with the supervisor in his truck, by not being allowed to change to a different work group, and by having to "endure racial jokes periodically." Compl. ¶ 13. IDOT has now moved, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, for summary judgment on Murdock's claims against it.

## II. ANALYSIS

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the consideration of a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, "set[ting] forth specific facts showing that there is a genuine issue for trial." *See, e.g., Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting Fed. R. Civ. P. 56). The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero*, 246 F.3d at 932 (internal quotations and citations omitted).

Title VII makes it unlawful for "an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Acting "because of race" means acting with a racially discriminatory

5

reason in mind. *Jordan v. City of Gary,* 396 F.3d 825, 832 (7th Cir. 2005); *Hildebrandt v. Ill. Dept. of Natural Resources,* 347 F.3d 1014, 1029 (7th Cir. 2003).

To establish a prima facie case of employment discrimination, a plaintiff must show: (1) he belongs to a protected group; (2) he performed satisfactorily; (3) his employer subjected him to an adverse employment action; and (4) similarly-situated employees outside his classification received more favorable treatment. *Davis v. Con-Way Transp. Centr. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004). Once the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking the employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was pretext for discrimination. *Id.*

Here, it does not matter whether Murdock has presented a prima facie case; IDOT has offered a legitimate, nondiscriminatory reason for his firing (the incident involving his alleged threat). *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11 (1993) (holding that once a defendant comes forward with a nondiscriminatory reason for its actions, the burden shifting framework "simply drops out of the picture"); *Brewer v. Bd. of Trs. of University of Illinois*, 479 F.3d 908, 915-16 (7th Cir. 2007) (same).

IDOT has put forth undisputed evidence that Fulgenzi decided to terminate Murdock based on his belief that Murdock had violated IDOT's Zero Tolerance Policy. Murdock has not disputed the fact that Fulgenzi was not aware of Murdock's race or color at the time he made the decision, or that Fulgenzi did not take any action or make any comments based on Murdock's race or color. Therefore, there is no evidence that Fulgenzi acted with a racially discriminatory reason in mind.

Murdock argues that because his comment to Kohn did not actually constitute a "threat," or place Kohn in immediate danger of physical harm, "it is possible that the 'threat' was mere pretext for [Murdock's] discharge, and that the real reason for the discharge was based upon discriminatory intent." Pl.'s Opp. 9. To demonstrate pretext, Murdock must show that IDOT's articulated reason for firing him (1) had no basis in fact; (2) did not actually motivate his discharge; or (3) was insufficient to motivate his discharge. *Davis*, 368 F.3d at 784 (citing *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002)). In short, "[a] pretext for discrimination . . . means something worse than a business error; pretext means deceit used to cover one's tracks." *Id.* (internal quotations omitted).

Murdock does little more than make conclusory allegations regarding pretext, ignoring the fact that there is absolutely no evidence on the record showing that the actual decision-maker, Fulgenzi, was even aware of Murdock's race or color. Murdock's argument boils down to a charge that IDOT's decision was erroneous, either because his comment was misconstrued or because a jury could find that Kohn did not actually feel threatened, and that he should have been given a chance to explain. Pl.'s Opp. 2. However, the Seventh Circuit has frequently remarked that courts are not meant to be "super-personnel boards charged with evaluating the general quality of employment decisions." *Brewer*, 479 F.3d at 922. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson,* 207 F.3d 374, 378 (7th Cir. 2000). Murdock simply has not presented any evidence demonstrating that IDOT's reason for his termination was not honest.

Murdock also contends that Marek, a Caucasian employee, threatened Janeteas with physical harm and was not fired. Based on this arbitrary enforcement of the Zero Tolerance Policy, Murdock argues, a jury would be able to infer that the stated reason for Murdock's termination was pretextual. Although Marek's treatment might be probative of whether a threat of violence is sufficient to motivate discharge, Murdock has not demonstrated that Fulgenzi was aware of the incident between Marek and Janeteas. In fact, Fulgenzi states in his affidavit that he knew nothing about it. Def.'s Ex. D. There is no evidence that Fulgenzi would not have acted similarly with regard to Marek had he been informed of the situation.

Rather than addressing the motivation of Fulgenzi, Murdock focuses much of his brief on the allegedly racist motives of Janeteas.[2] However, even if a jury could infer that Janeteas was racially motivated in reporting Murdock's alleged threat but not that of Marek, Murdock has not provided any evidence that Janeteas had any input on the decision regarding Murdock's termination. Nor is there any evidence that those who did have input—Kohn and Leschman—were racially motivated. "[E]ven where a biased employee may have leveled false charges of misconduct against the plaintiff, the employer does not face Title VII liability so long as the decision maker independently investigates the claims before acting." *Brewer*, 479 F.3d at 920. Murdock has not demonstrated that Janeteas' racism—assuming that he is in fact racist—should be imputed to Fulgenzi or IDOT. In fact, Fulgenzi did not even speak to Janeteas regarding

---

[2] Murdock relies on the following events to show that Janeteas is a racist. When asked how he liked the job, Murdock remarked to an unnamed co-worker that he liked it and viewed it as "white folks welfare." When asked to clarify, Murdock explained that Black people are often viewed as being on welfare and lazy and Murdock believed that the IDOT employees were not doing enough work to earn the money they were being paid. At a later time, when Murdock was helping shovel asphalt for pothole patching, someone grabbed the shovel from Murdock's hands while Janeteas asked him if that was like white folks welfare. Def.'s Statement of Facts ¶¶ 76-77.

Murdock; he relied on written statements by two eyewitnesses and he confirmed that his decision to terminate Murdock was consistent with discipline issued by IDOT in similar cases. There is no evidence that either eyewitness was racially motivated in his report. *See id.* ("[W]here a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker . . . ." (internal citations omitted)). Because no jury could find that IDOT's decision to terminate Murdock was racially motivated, Murdock's race discrimination claim is dismissed.

IDOT has also moved to dismiss Murdock's remaining claims that he suffered discriminatory treatment by not being allowed to work with certain people as a "duo," by not being allowed to ride with the supervisor in his truck, by not being allowed to change to a different work group, and by having to endure racial jokes. Murdock has put forth no evidence or arguments supporting these claims. Likewise, Murdock has failed to respond to IDOT's argument that even if Murdock could prove these allegations, there is no nexus between these events and Fulgenzi's decision to terminate Murdock. *See* Def.'s Memo. 14. Nor has Murdock responded to IDOT's argument that Murdock has no evidence demonstrating that any of those actions—to the extent that would even qualify as adverse actions—were motivated by race. Under the law, Murdock must be viewed as having abandoned these claims.[3]

---

[3] IDOT also moves for summary judgment on Murdock's Section 1981 and 1983 claims, allegations raised in his complaint but not, significantly, reiterated in any subsequent documents. Murdock has not responded to IDOT's arguments regarding these claims. Accordingly, the court finds Murdock has abandoned his Section 1981 and 1983 claims against IDOT. *See, e.g., Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7 Cir. 1999) (arguments not presented to the district court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same); *Oak Brook Hotel Co. v. Teachers Ins. and Annuity Ass'n of America*, 846 F.Supp. 634, 641

### III. CONCLUSION

For the foregoing reasons, IDOT's motion for summary judgment is granted.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 19, 2007

---

(N.D.Ill. 1994) (finding plaintiff's failure to defend particular claim in response to defendant's motion for summary judgment resulted in treating that claim as abandoned).